THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES,<br><br>                Plaintiff,<br><br>*ex rel.* TERRANCE THURMER, JR.<br>18390 Trott Brook Parkway NW<br>Elk River, MN 55330<br><br>STEPHANI LEFLORE,<br>4616 Longfellow Avenue South<br>Minneapolis, MN 55407<br><br>BRITTNEY O'BRIEN,<br>860 Lawson Avenue Apt. A<br>St. Paul, MN 55106<br><br>and SARA WEYER<br>3149 McKnight Road #332<br>White Bear Lake, MN 55110<br><br>Individually, and as Relators for<br>UNITED STATES OF AMERICA,<br><br>                Relators,<br>vs.<br><br>CVS CAREMARK CORPORATION.,<br>155 South Main Street, Suite 301<br>Providence, RI 02903<br><br>                Defendant. | Case No. _____<br><br>**FILED UNDER SEAL<br>PURSUANT TO THE<br>FEDERAL FALSE<br>CLAIMS ACT,**<br>31 U.S.C. §3730(b)(2)<br><br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

1.    Now comes the United States of America and Terrance Thurmer, Stephani LeFlore, Brittney O'Brien and Sara Weyer, individually and as Relators for the United States, stating as follows for their Complaint against CVS Caremark Co. ("CVS") for violation of the Federal False Claims Act, 31 U.S.C. §§3729-32, and the Supplemental Nutrition Assistance Program ("SNAP"), 7 U.S.C. §2024, commonly known as the "Food Stamp Program."

## INTRODUCTION

2. This is an action by the Relators, on behalf of the United States, to recover treble damages and civil penalties arising from false statements and claims made or caused to be made by Defendant CVS to the United States (the "Government").

3. CVS owns and operates a nationwide chain of retail pharmacies.

4. CVS's food stamp clients consistently receive illegal compensation from CVS in the form of rebates and coupons in return for transacting their federally funded SNAP business with CVS stores.

5. Federal law prohibits the transfer of anything of value in exchange for SNAP benefits other than approved food items.

6. CVS has violated the Federal False Claims Act in all States in which CVS transacts SNAP business, which is all States of the United States with the exception of Alaska, Arkansas, Idaho, Oregon, South Dakota, Utah, Washington, and Wyoming.

## JURISDICTION AND VENUE

7. This is a civil action arising under the laws of the United States to redress violations of the False Claims Act, 31 U.S.C. §§3729-3730. This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730; (ii) pursuant to 28 U.S.C. §1331 and 7 U.S.C. §2024 which confers federal subject matter jurisdiction; and, (iii) pursuant to 28 U.S.C. §1345, because the United States is a plaintiff.

8. This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation or in a Government

Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

9. To the extent that there may have been a public disclosure unknown to Relators, the Relators are original sources under 31 U.S.C. §3730(e)(4). Relators have direct and independent knowledge of the information on which the allegations are based and have voluntarily provided the information to the Government before filing this action.

10. Relators have provided to the Attorney General of the United States and to the United States Attorney for the District of Columbia a disclosure statement summarizing known material evidence and information related to the Complaint, in accordance with the provisions of 31 U.S.C. §3730(b)(2). On December 15, 2010, Relators and counsel met with Tiffaney Nelson, a Department of Agriculture Office of Inspector General investigator, and Gary Nelson, a Health and Human Services Office of Inspector General investigator, in Minneapolis, Minnesota. Relators provided these Federal investigators with substantially all of the information concerning CVS's False Claims Act violations.

11. This court has personal jurisdiction over the Defendant under 31 U.S.C. §3732(a) because Defendant submitted false or fraudulent claims to the Government through its stores, and Defendant has made, used, or caused to be made or used, false or fraudulent records to get false or fraudulent claims paid or approved by the Government. Defendant can be found in, is authorized to transact business in, and is now transacting business in all States except the eight listed in paragraph 6 above.

12. Venue is proper in the District of Columbia under 31 U.S.C. §3732(a) and 28 U.S.C. §1391, as the United States Department of Agriculture, which administers the food

stamps program, is headquartered in the District of Columbia, and CVS has at least 25 pharmacy stores in Washington, DC.

## PARTIES

13.     Relator Stephani LeFlore is a licensed pharmacist currently working for CVS as a full-time overnight pharmacist in St. Paul, Minnesota. She began working with CVS in July 2008. Ms. LeFlore previously held positions as a pharmacy manager for Walgreen Corporation and as a staff pharmacist for Merwin Long Term Care Pharmacy, both in Minnesota. Ms. LeFlore graduated from the University of Minnesota College of Pharmacy and has been a licensed pharmacist in Minnesota since 1999.

14.     Relator Terrance Thurmer, Jr. is a licensed pharmacist currently working for CVS as a full-time pharmacist in St. Paul, Minnesota. Mr. Thurmer graduated from the University of Montana College of Pharmacy in 2003 and has been a licensed pharmacist in Minnesota since September 2004. He first worked for Walgreen Pharmacy for over a year, before joining CVS, where he has worked since 2005.

15.     Relator Brittney O'Brien was an overnight shift manager working for CVS at its 810 Maryland Avenue, St. Paul, Minnesota location. She worked for CVS from September 2007 until November 29, 2010. Relator O'Brien was laid off when her CVS store was no longer open 24 hours daily. Relator Brittney O'Brien is eligible for SNAP benefits and has an EBT card.

16.     Relator Sara Weyer is a pharmacy technician and until recently worked for CVS at its 810 Maryland Avenue, St. Paul, Minnesota location. She worked for CVS from September 2008 until her layoff on November 29, 2010. Relator Weyer was laid off when her CVS store was no longer open 24 hours daily. Relator Weyer is eligible for SNAP benefits and has an EBT card.

17. Relators are all United States citizens and they bring this action on their own behalf and on behalf of the Government.

18. Defendant CVS is a nationwide retail pharmacy corporation headquartered in Woonsocket, Rhode Island. The acronym CVS stands for "Consumer Value Stores" and the corporation has been in the retail pharmacy business since 1963. CVS's website boasts that the company has annual sales of $99 billion and was ranked 18th in the Fortune 500 for 2010. CVS has at least 7,152 retail pharmacy stores in 42 States, the District of Columbia and Puerto Rico. In the past, it has resolved at least one False Claims Act lawsuit alleging Medicaid fraud and entered a concomitant Corporate Integrity Agreement with the Department of Health and Human Services Office of Inspector General regarding its violations.

## FOOD STAMP LAWS – THE "SNAP" PROGRAM

19. CVS provides service to thousands of customers under the Federal Supplemental Nutrition Assistance Program (SNAP), formerly called the Federal Food Stamp program. SNAP is a program sponsored by the United States Department of Agriculture and is administered by State agencies pursuant to Federal law and regulation and with Federal Government funds. 7 U.S.C. §2011 et seq.

20. Federal law makes it a crime to wrongfully use, transfer, acquire, alter or possess SNAP benefits. 7 U.S.C. §2024(b).

21. It is illegal for a retailer like CVS to present or cause to be presented SNAP benefits for payment or redemption knowing the benefits were received, transferred or used in violation of the SNAP Act or Federal Department of Agriculture regulations. 7 U.S.C. §2024(c).

22. Only eligible food items may be purchased with SNAP benefits. 7 U.S.C. §2013(a) and 7 U.S.C. §2012(k). See <u>Exhibit 1</u>: USDA Determining Product Eligibility for Purchase with SNAP benefits.

23. Pursuant to 7 C.F.R. 278.2, participating retail stores like CVS may accept SNAP benefits from customers "only in exchange for eligible food," and "coupons [food stamps] may not be accepted in payment on interest for loans or for any other nonfood use." It is illegal for a retailer like CVS to "traffick" in SNAP (food stamp) benefits by providing consideration other than eligible food items in exchange for SNAP payments. 7 C.F.R. 271.2. (defining "Eligible food" items and "Trafficking").

## ILLEGAL TRAFFICKING AND FALSE CLAIMS

24. SNAP program benefits are provided by the use of an Electronic Benefit Transfer (EBT) card system, pursuant to 31 U.S.C. §3336. Under this program the recipient of benefits can purchase various food products from approved vendors using the EBT card, up to the level of benefits for which the recipient is eligible.

25. The United States Department of Agriculture funds and administers, in partnership with States and local agencies, the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC). It serves pregnant and breastfeeding women, as well as children up to five years old. Eligibility criteria include poverty and identified medical or nutritional risks. Program benefits include referrals for health services, child health services, education and food. Eligible citizens who receive WIC food benefits purchase the foods with their EBT - SNAP benefit card.

26. As of July 2009, 5000 CVS stores were transacting SNAP-EBT cards.

27.     CVS has recently expanded its grocery offerings as a way of drawing in customers to buy non-food items. CVS and similar stores are a common source of food in low-income neighborhoods where there are no other grocery stores and many people use SNAP EBT cards to purchase groceries.

28.     CVS stores offer a promotional program to their customers called ExtraCare. ExtraCare is a promotional inducement program whereby customers enrolled in the program receive inducements in the form of rebates called "Extra Bucks" for transacting business. See Exhibit 1.

29.     CVS stores offer the ExtraCare promotional inducement program to their customers, including recipients of the SNAP and WIC programs, and give these members a 2% rebate or inducement for every dollar they spend in the store, including purchases paid for with their EBT – SNAP benefits card using Federal Government funding.  These rebates or incentives are calculated quarterly, and the customer receives an ExtraBucks coupon for 2% of their purchases after the close of the quarter, at the time of their next purchase.

30.     Additionally, CVS advertises special items which are eligible for an instant Extra Bucks coupon immediately at the time of the sale. See Exhibit 2, Exhibit 3 and Exhibit 4.

31.     CVS management encourages all employees to sign up every customer on the ExtraCare promotional program, including customers whose purchases may be paid for by the SNAP benefit programs.  Exhibit 5 shows an average Scan Rate of ExtraCare cards of 99.6% of customers at CVS Caremark store #7060 located at 810 Maryland East, St. Paul, Minnesota. This means that 99.6% of that store's customers used an ExtraCare card.

32.     CVS customers with ExtraCare cards, including SNAP programs customers, can get their coupons printed out at the "Coupon Center" located in each CVS store.  The coupons

can then be used to purchase non-eligible items in the store, such as cosmetics, hair spray, computer ink, toys, photos, and condoms.

33.  Exhibit 6 shows that in one business week, September 12, 2010 through September 18, 2010, store #7060 processed $2,131.17 in SNAP program – EBT card business. With a 99.6% Scan Rate for ExtraCare, SNAP customers were given cash value of at least 2%, equaling $42.45.

34.  There are approximately 7,152 CVS stores giving rebates and coupons to SNAP beneficiaries daily. These rebates and coupons have millions of dollars in value. Because these rebates can be and are used to purchase non-food, SNAP-ineligible store items, they constitute wrongful, illegal rebates or kickbacks that induce CVS SNAP customers to spend their SNAP benefits with CVS.

35.  Even if they do not induce some SNAP customers, the ExtraCare rebates to SNAP customers for their food stamp and WIC benefits constitute illegal trafficking of SNAP benefits because CVS is wrongfully giving valuable consideration that can be used for non-food, ineligible items in exchange for Federal SNAP benefits.

36.  CVS collects millions of dollars of SNAP benefits electronically daily from its customers to whom it has given ExtraCare rebates/kickbacks, and then regularly presents these claims for these amounts, without deducting the rebates, to the United States Government and gets paid based on those claims that do not reflect rebates.

**RELATORS' DISCOVERY OF THE FRAUD**

37.  Hundreds of thousands of SNAP benefit customers have obtained ExtraCare rebate benefits at CVS stores around the nation from at least August 2006, to the present and

continuing. Relators have personally witnessed hundreds of SNAP benefit customers obtaining ExtraCare rebates from CVS in St. Paul, Minnesota.

38.     CVS has within its exclusive possession and control documents that would provide the court with greater specificity and particularity, including specific damages and the false claims submitted. Documents that would evidence the fraud include but are not limited to the cash register details, sales journals, bookkeeping records, and computer data files. Relators viewed many of these documents in the course of their employment at CVS. Virtually all documentation of this fraud is contained on paper and or electronic media in the exclusive possession and control of CVS Caremark at its stores and the CVS Rhode Island headquarters.

39.     Exhibit 4 is a specific example of a cash register receipt, dated August 12, 2010, from CVS store #7060 at 810 Maryland East, St. Paul, Minnesota, showing a purchase by Relator O'Brien of eligible food items (Doritos and Mountain Dew) with a SNAP – EBT card #XXXX2002 and an ExtraCare card #2672. The entire $5.36 purchase was paid for with Government SNAP funds. This transaction issued an instant rebate coupon of $1.00. This $1.00 rebate coupon has value and can be used to purchase merchandise in any CVS store, including items that are not legal to purchase with SNAP benefits. Relator O'Brien will also receive a rebate credit of 2% of this purchase on her next quarterly statement. This 2% can also be used to purchase SNAP ineligible merchandise.

40.     Exhibit 3 is a specific example of a cash register receipt, dated August 13, 2010 from the CVS store #7060 at 810 Maryland East, St. Paul, Minnesota, showing a purchase by Relator Weyer of eligible food items (Mellow Yellow, Coca Cola, and Sprite) with a SNAP – EBT card #XXXX5590 and an ExtraCare card #0554. The entire $13.00 purchase was paid for with Government SNAP funds. This transaction issued an instant rebate coupon of $3.00. This

$3.00 rebate coupon has value and can be used to purchase merchandise in any CVS store, including items that are not legal to purchase with SNAP benefits. Relator Weyer will also receive a rebate credit of 2% of this purchase on her next quarterly statement, which can be used to purchase SNAP ineligible merchandise.

41. <u>Exhibit 7</u> is a specific example of a cash register receipt, dated October 10, 2010, from the CVS store #1776 at 2730 E. County Road E, White Bear Lake, Minnesota, showing a purchase by Relator Weyer of eligible food items (Lays Potato Chips and Mountain Dew) with a SNAP – EBT card #XXXX5590 and an ExtraCare card #0554. The entire $15.00 purchase was paid for with Government SNAP funds. This transaction issued an instant rebate coupon of $5.00. This $5.00 rebate coupon has value and can be used to purchase merchandise in any CVS Caremark store, including items that are not legal to purchase with SNAP benefits. Relator Weyer will also receive a rebate credit of 2% of this purchase on her next quarterly statement, which can be used to purchase SNAP ineligible merchandise.

42. <u>Exhibit 8</u> is a specific and representative example of a cash register receipt dated January 18, 2011, from CVS store #1751 at 2196 White Bear Avenue North, Maplewood, Minnesota, showing a purchase by Relator Weyer of eligible food items (Gatorade, Pepsi, Doritos, Lays Potato Chips and Caramels) with a SNAP – EBT card #XXXX5590 and ExtraCare card #XXXX6022. The entire $20.99 purchase was paid for with Government SNAP funds. This transaction issued an instant rebate coupon of $10.00 (for the Pepsi and Lays purchase) and an instant rebate coupon of $1.00 (for the Green Bag reusable bag). This transaction was Relator Weyer's first purchase in the first quarter of 2011 and produced an ExtraBucks rebate of $1.50 for her Fall (Autumn) spending period in 2010. This ExtraBucks rebate represents 2% of all purchases with ExtraCare card #XXXX6022. All purchases using ExtraCare card #XXXX6022

during the Fall (Autumn) spending period in 2010 were paid for with Government SNAP funds. Relator Weyer then used her $10.00, $1.00 and $1.50 Extrabucks rebates and coupons to purchase the items listed on Exhibit 13: Revlon hair dye; Lady Speedstick Deodorant; and diapers (CVS SUPRM S3 60C). None of these items purchased, as shown on <u>Exhibit 9</u>, are food items eligible for payment by SNAP funds.

43.     Extra Bucks coupons are now being sold on e-Bay, so this wrongful trafficking by CVS allows SNAP beneficiaries to obtain cash via use of their SNAP-EBT card.

44.     CVS carefully designed its Extra Bucks program to exclude certain purchases and has designed its electronic billing system to prevent purchase of certain goods in the initial SNAP-EBT transaction (e.g. alcohol and tobacco).  Its detailed control of the electronic SNAP-EBT and Extra Bucks transactions demonstrate the detailed thought and planning it devoted to its program.

45.     Defendant CVS could easily have set up its electronic system to provide rebates and coupons to SNAP customers so that the rebates and coupons only apply to SNAP eligible foods.

46.     Thousands of American businesses honor and seek SNAP business, but do not illegally traffic by giving kickbacks to SNAP-EBT beneficiaries. They are competitively disadvantaged by CVS's illegal conduct.

47.     By virtue of hundreds of thousands of the transactions described above, Defendant CVS knowingly and illegally trafficked and continues to traffick in food stamp and WIC SNAP benefits and thereby submits, or causes to be submitted, false claims for payment for SNAP benefits from the Federal Government.

48. The SNAP Food Stamp and WIC benefit systems are administered by designated agencies in each of the States (e.g. State, county, and local human services and health departments). Federal law mandates that the States require that all participating retailers in the food stamp and WIC SNAP programs enter a retailer agreement. These agreements include, *inter alia*, an express agreement by the retailer to obey all laws and regulations concerning food stamp and WIC programs, as a condition of participation. CVS certified or agreed to its compliance with the statutes and regulations prohibiting the exchange of non-authorized items for food stamp and WIC benefits by these agreements with the administering State agencies on behalf of the Federal Government. CVS has done this in all States of the United States with the exception of the 8 States identified above. Representative samples of these participating retailer agreements are attached as Exhibit 10 (California, Food Stamps) and Exhibit 11 (Vermont, WIC benefits).

## FALSE CLAIMS ACT VIOLATIONS

### COUNT I
### False Claims Act - Presentation of False Claims
### 31 U.S.C. § 3729(a)(1), 31 U.S.C. § 3729(a)(1)(A), as amended in 2009

49. The allegations of the preceding paragraphs are realleged as if fully set forth below.

50. Defendant CVS, in reckless disregard or deliberate ignorance of the truth or falsity of the information which supported claims to the U.S. Department of Agriculture's Food and Nutrition Service, or with actual knowledge of the falsity of the information that supported these claims, causes, and continues to be causing, the use of false or fraudulent materials or information to support claims paid by the Government.

51. Through the acts described above and otherwise, Defendant and its agents and employees knowingly presented or caused to be presented to the United States Government false

or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1), and, as amended, 31 U.S.C. § 3729(a)(1)(A).

52.  The United States of America, unaware of the falsity of the claims and statements made by Defendant, and in reliance on the accuracy of these claims and statements, paid and is continuing to pay for millions of dollars of SNAP program benefits that were wrongfully and illegally obtained from its customers who use both the SNAP benefit programs and Defendant's ExtraCare program.

53.  As a direct result of Defendant's actions as set forth in the Complaint, the United States of America has been damaged, with the amount to be determined at trial, and is also entitled to statutory penalties.

## COUNT II
### False Claims Act - Making or Using False Records or Statements to Cause Claim to be Paid
### 31 U.S.C. § 3729(a)(2), 31 U.S.C. § 3729(a)(1)(B), as amended in 2009

54.  The allegations of the preceding paragraphs are realleged as if fully set forth below.

55.  Through the acts described above and otherwise, Defendant CVS and its agents and employees knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(2), and, as amended, 31 U.S.C. § 3729(a)(1)(B), in order to get false or fraudulent claims paid and approved by the United States Government.

56.  Defendant made false certification records or statements in order to participate in the SNAP program, and receive Federal payments thereunder, which records or statements certified that Defendant would comply or had complied with all laws relating to the SNAP program.

57. The United States of America, unaware of the falsity of the claims and/or statements made by Defendant, and in reliance on the accuracy of these claims and/or statements, paid and is continuing to pay millions of dollars of SNAP program benefits that were wrongfully and illegally obtained from its customers who use both the SNAP benefit programs and Defendant's ExtraCare program

58. As a direct result of Defendant's actions as set forth in the Complaint, the United States of America has been damaged, with the amount to be determined at trial, and is also entitled to statutory penalties.

## COUNT III
### False Claims Act - Making or Using False Records or Statements to Conceal, Avoid and Decrease Obligation to Repay Money
### 31 U.S.C. § 3729(a)(7), 31 U.S.C. § 3729(a)(1)(G), as amended in 2009

59. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

60. Through the acts described above and otherwise, in violation of 31 U.S.C. § 3729(a)(7), and, as amended, 31 U.S.C. § 3729(a)(1)(G), Defendant and its agents and employees knowingly made, used, or caused to be made or used false records and statements to conceal, avoid, and decrease Defendant's obligation to repay money to the United States Government that Defendant improperly or fraudulently received. Defendant also failed to disclose material facts that would have resulted in substantial repayments to the United States Government.

61. SNAP benefits are deemed to be obligations of the United States under 7 U.S.C. §2024(d), and 7 C.F.R. §271.5.

62. As a direct result of Defendant's actions as set forth in the Complaint, the United States of America has been damaged, with the amount to be determined at trial, and is also entitled to statutory penalties.

63. As a direct result of Defendant's actions as set forth in the Complaint, the United States of America has been, and may continue to be, severely damaged.

64. The amounts of the false claims to the United States were material and the CVS certifications of compliance with the SNAP program laws were material to the Federal Government's payments to CVS for the SNAP benefits CVS collected. Obedience to the laws against trafficking in SNAP benefits is material to the Federal Government paying retailers for SNAP benefits redeemed.

**PRAYER FOR RELIEF**

WHEREFORE, Relators pray for judgment against Defendant on behalf of the United States and themselves as follows:

    a. That Defendant CVS Caremark Corporation is found to have violated the False Claims Act, and be enjoined from future violations of the federal False Claims Act.

    b. That this Court enter judgment against Defendant CVS in an amount equal to three times the amount of damages the United States Government has sustained because of Defendant's false or fraudulent claims, plus the maximum civil penalty for each violation of 31 U.S.C. §3729;

    c. That Relators be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

    d. That Relators be awarded attorney's fees, interest and all costs of this action; and

e.   That Plaintiff and Relators recover such other relief as the Court deems just and proper.

## JURY DEMAND

Relators demand trial by jury on all claims.

Dated: February 17, 2011

Respectfully Submitted,

*/s/ Michelle L. Woolley*

Mark Hanna
District of Columbia Bar No. 471960
Ann Lugbill
District of Columbia Bar No. 462850
Michelle L. Woolley
District of Columbia Bar No. 983455
MURPHY ANDERSON PLLC
1701 K Street, NW
Suite 210
Washington, DC 20006
Phone: (202) 223-2620
Fax: (202) 223-8651
mhanna@murphypllc.com
mwoolley@murphypllc.com

*Attorneys for Relators – Local Counsel*

Neil P. Thompson
MN. LIC. 0291638
2249 East 38th Street
Minneapolis, MN 55407-3083
Phone: (612) 246-4788
Fax: (612) 728-3873
nptrxlaw@gmail.com

Brian Wojtalewicz
MN. LIC. 118369
WOJTALEWICZ LAW FIRM, LTD.
139 N. Miles Street, P.O. Box 123
Appleton, MN 56208-0123
Phone: (320) 289-2363
Fax: (320) 289-2369

brian@wojtalewiczlawfirm.com

James G. VanderLinden
LEVANDER & VANDERLINDEN, P.A
MN. LIC. 112136
670 Park Place East
5775 Wayzata Boulevard
St. Louis Park, MN 55416
Phone: (612) 339-6841
Fax: (952) 767-6846
jim@vanderlindenlaw.com

Robert P. Christensen
MN. LIC 16597
670 Park Place East
5775 Wayzata Boulevard
St. Louis Park, MN 55416
Phone: (612) 333-7733
Fax: (952) 767-6846
rpchristensen@visi.com

*Attorneys for Relators*